UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROGER LAMUNION,

      Plaintiff,

      v.

FULTON COUNTY, INDIANA,

      Defendant.

Case No. 3:18-CV-01019-JD-MGG

**DEFENDANT FULTON COUNTY, INDIANA'S
OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION ....................................................................................... 1

FACTUAL BACKGROUND ......................................................................... 2

    A. The Fulton County Courthouse. .........................................................2

    B. Rochester's Established Christmas Traditions and the Longstanding
       Optimist's Display...........................................................................3

    C. Procedural History. ...........................................................................5

LEGAL STANDARD.................................................................................. 5

ARGUMENT............................................................................................. 6

I.    This Court should summarily deny Plaintiff's motion because of his
     inexcusable, nearly two-year delay in seeking emergency injunctive
     relief. ....................................................................................6

II.   Plaintiff is unlikely to succeed on the merits of his claims. ...................8

    A. Plaintiff lacks Article III standing to bring this case. .....................8

        1. A non-resident observer's ideological objection to the Display's
           presence on the courthouse grounds is not a concrete injury-in-
           fact. .......................................................................................9

        2. Plaintiff's allegation of a "drive-by" injury is meritless because
           Article III does not confer standing on mere "offended observers"
           of a religious display. .............................................................10

    B. The Display complies with the Establishment Clause. .................12

        1. The Display is presumptively constitutional under *American
           Legion.* ...............................................................................12

        2. Plaintiff has failed to overcome the Display's presumptive
           constitutionality. .................................................................17

        3. The Establishment Clause permits the inclusion of a nativity
           scene in a broader holiday display...........................................17

III.  Plaintiff will suffer no irreparable harm without an injunction. ........................23

IV.  Granting an injunction would harm the County, local residents, and the
     public interest. ...................................................................24

CONCLUSION ..................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civil Liberties Union of Ill. v. City of St. Charles,*
  794 F.2d 265 (7th Cir. 1986).................................................................. 12

*Am. Jewish Cong. v. City of Chicago,*
  827 F.2d 120 (7th Cir. 1987)................................................................. 21

*Am. Legion v. Am. Humanist Ass'n,*
  139 S. Ct. 2067 (2019).................................................................*passim*

*Books v. City of Elkhart,*
  235 F.3d 292 (7th Cir. 2000)............................................................... 12

*Celebration Int'l, Inc. v. Chosun Int'l, Inc.,*
  234 F. Supp. 2d 905 (S.D. Ind. 2002)................................................ 8, 9

*City of L.A. v. Lyons,*
  461 U.S. 95 (1983) .............................................................................. 13

*Cty. of Allegheny v. Am. Civil Liberties Union Greater Pitts. Ch.,*
  492 U.S. 573 (1989) ................................................................ 16, 25, 26

*Ditton v. Rusch,*
  2014 WL 4435928 (N.D. Ill. Sept. 9, 2014) ....................................... 27

*E.E.O.C. v. City of Janesville,*
  630 F.2d 1254 (7th Cir.1980)............................................................... 28

*Elewski v. City of Syracuse,*
  123 F.3d 51 (2d Cir. 1997) ................................................................. 25

*Franklin v. Civil City of S. Bend,*
  No. 3:13-CV-207-TLS, 2015 WL 3634614 (N.D. Ind. Jan. 27, 2015) ....................... 7

*Freedom From Religion Found., Inc. v. Cty. of Lehigh,*
  933 F.3d 275 (3d Cir. 2019) ................................................................ 17

*Freedom From Religion Found., Inc. v. Lew,*
  773 F.3d 815 (7th Cir. 2014)............................................................ 9, 10

*Freedom From Religion Found., Inc. v. Obama,*
  641 F.3d 803 (7th Cir. 2011).......................................................... 9, 11, 12

*Freedom From Religion Found., Inc. v. Zielke,*
  845 F.2d 1463 (7th Cir. 1988)............................................................. 10

*Goodman v. Ill. Dep't of Fin.,*
  430 F.3d 432 (7th Cir. 2005)................................................................. 5

### Table of Authorities—continued

*Harris v. City of Zion*,
927 F.2d 1401 (7th Cir. 1991).................................................................................. 12

*Ixmation, Inc. v. Switch Bulb Co., Inc.*,
2014 WL 5420273 (N.D. Ill. Oct. 23, 2014) ........................................................ 7, 8

*LigTel Commc'ns, Inc. v. Baicells Techs., Inc.*,
455 F. Supp. 3d 792 (N.D. Ind. 2020) ...................................................................... 5

*Lynch v. Donnelly*,
465 U.S. 668 (1984) ...................................................................................*passim*

*Mather v. Vill. of Mundelein*,
864 F.2d 1291 (7th Cir. 1989)..................................................................21, 22, 24

*Michigan v. U.S. Army Corps of Eng'rs*,
667 F.3d 765 (7th Cir. 2011).................................................................................... 8

*Nken v. Holder*,
556 U.S. 418 (2009) ............................................................................................... 28

*Planned Parenthood of Ind. v. Comm'r of Ind. State Dep't Health*,
699 F.3d 962 (7th Cir. 2012)................................................................................. 27

*Scherr v. Marriott Int'l, Inc.*,
703 F.3d 1069 (7th Cir. 2013)............................................................................... 13

*See Lujan v. Def. of Wildlife*,
504 U.S. 555 (1992) ......................................................................................... 10, 13

*Tough Traveler, Ltd. v. Outbound Prods.*,
60 F.3d 964 (2d Cir. 1995) ................................................................................... 27

*Town of Greece, N.Y. v. Galloway*,
572 U.S. 565 (2014) ............................................................................................... 16

*Tr. of Teamsters Union No. 142 Pension Fund v. AJ & S Trucking, Inc.*,
992 F. Supp. 2d 870 (N.D. Ind. 2014) ..................................................................... 6

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982) ......................................................................................... 11, 12

*Winter v. Nat'l Res. Def. Council*,
555 U.S. 7 (2008) ................................................................................................... 28

*Ybarra v. Rodriguez*,
No. 3:19-CV-343-JD-MGG, 2020 WL 3529822 (N.D. Ind. June 30, 2020) .............. 7

**Miscellaneous**

Emma Diehl, *Central Moravian Church Putz*, THE MORNING CALL .......................... 16

Ida Brudnick, *House and Senate Chaplains*, CONG. RES. SERV. (2011) .................... 17

*Po'pay*, ARCHITECT OF THE CAPITOL ............................................................................ 18

## INTRODUCTION

Plaintiff Roger LaMunion brought this Establishment Clause action in 2018 to challenge the constitutionality of an annual holiday display (the "Display") on the grounds of the Fulton County Courthouse. Although two Christmases have already come and gone since he sued, Plaintiff *now* belatedly seeks a preliminary injunction— an extraordinary and drastic remedy—to ban the Display's nativity scene during the upcoming holiday season. Plaintiff's nearly two-year delay in seeking relief, for which he has no justification, is reason enough to deny his untimely motion.

Aside from his inexplicable delay, Plaintiff also fails to meet the four factors for a preliminary injunction. *First*, Plaintiff is unlikely to prevail on the merits of his claim. At the outset, Plaintiff is not even a resident of Fulton County, and he has utterly failed to demonstrate that he has Article III standing to bring this action. He has alleged no facts to support a finding that he has suffered any present or even potential legally cognizable injury as a consequence of the Display. He has not altered his conduct one whit. His mere offense at seeing a religious display on government property is constitutionally insufficient to support federal court jurisdiction.

As for Plaintiff's Establishment Clause claim, both the Supreme Court and Seventh Circuit have upheld nativity scenes where, as here, they are integrated into a larger holiday display. And Plaintiff has provided no evidence that the County's reason for the Display is anything more than celebrating the holiday season and acknowledging the historical origins of Christmas, both of which are valid secular purposes. In any event, the Supreme Court holds that religiously expressive displays like crèches are presumptively constitutional where they are longstanding—as this

decades old Display indisputably is—and Plaintiff has failed to rebut that presumption and cannot possibly rebut it on the record before this Court.

*Second*, Plaintiff will not suffer irreparable harm without an injunction. Now that Christmas is around the corner, Plaintiff tries to manufacture a sense of urgency to justify his request for emergency relief. However, setting aside the fact that he waited *decades* to even bring this lawsuit, Plaintiff then sat silent for the last two holiday seasons after filing this lawsuit. To the extent that he argues that the Display violates his First Amendment rights, Plaintiff has failed to describe the nature and extent of those harms beyond his abstract psychological grievances.

*Third* and *fourth*, the balance of harms and the public interest, which merge when the government is the defendant, strongly weigh against injunctive relief. Banning a local community treasure that has been in place without incident or complaint for well over four decades, to appease an out-of-county plaintiff with an ideological ax to grind, does nothing to further the public interest. Instead, enjoining the Display would send an impermissible message to the local community of government hostility. Plaintiff's motion for a preliminary injunction should be denied.

## FACTUAL BACKGROUND

### A.   The Fulton County Courthouse.

This action arises in Rochester, Indiana, and concerns a privately-owned and - maintained holiday display (the "Display") erected each holiday season for over four decades on the grounds of the historical Fulton County Courthouse. The County maintains several of its offices in the courthouse. (Dep. of Bryan Lewis ["Lewis Dep."] 9:23–10:3, ECF No. 42-2.) The courthouse sits in the middle of a park-like square,

bounded by four intersecting streets. (Decl. of Bryan Lewis, President, Fulton County Commissioners ["Lewis Decl."] ¶ 4 (attached hereto as **Exhibit A**.)) The courthouse's original main entrance was on the west side facing Main Street; but for security purposes, the County has closed all entries and created a single-access entrance on the east side. (Lewis Decl. ¶ 7; Lewis Dep. 14:11–15.)

### B. Rochester's Established Christmas Traditions and the Longstanding Optimist's Display

Each year, the Rochester Downtown Partnership, a local economic-development organization, holds the Downtown Holiday Stroll. (Lewis Decl. ¶ 19.) Drawing hundreds of local residents each year, the Holiday Stroll traditionally marks the start of Rochester's Christmas celebrations. (*Id*. at ¶ 20.) The Holiday Stroll's showcase activities take place in the courthouse square. (*Id*. at ¶ 21.)

To prepare for the event, community members transform the grounds into a winter wonderland. (Lewis Decl. ¶ 21.) Volunteers erect the "Santa House," a holiday-themed shed decorated like the North Pole, on the main walkway leading up to the courthouse doors, at the edge of the southwestern quadrant of the lawn. (*Id*. at ¶ 22.) County workers adorn the towering pine trees in the square with Christmas lights. (*Id*.) And the Optimist Club of Rochester, as it has done for nearly 40 years, erects the Display at issue in this action. (*Id*.; Decl. of James Straeter, Treasurer, Optimist Club of Rochester ["Straeter Decl."] ¶ 5 (attached hereto as **Exhibit B**.))

During the Holiday Stroll, a Rochester family may enjoy holiday-themed activities across the square's north, west, and south lawns. (Lewis Decl. ¶ 23.) On the west side, Santa greets children in his House and Christmas carolers sing along the

3

main sidewalk. (*Id*. at ¶24.) On the north side are ice sculpture demonstrations and free carriage rides. (*Id*. at ¶ 25.) And on the south side, families may pet live reindeer or take pictures next to the Optimist Club's Display. (*Id*. at ¶¶ 27–28.)

The Rochester Optimist Club is a volunteer organization dedicated to improving the lives of youth through service projects and civic engagement. (Straeter Decl. ¶ 3.) The Optimists are a secular organization with no religious affiliation. (*Id*. at ¶ 4.) The club has owned, stored, and maintained the Display for nearly 40 years, having taken over responsibility at the request of the scene's previous caretakers, the Rochester Retail Merchants Association. (*Id*. at ¶¶ 2, 5, 8) *The Display has existed at least since 1960*, when it was designed by an art teacher from a local school. (*Id*. at ¶ 6; Lewis Decl. ¶ 30.) The Optimists typically assemble the Display the first Saturday after Thanksgiving, around the time the Rochester Downtown Partnership prepares for the Holiday Stroll, and remove it shortly after New Year's. (Lewis Decl. at ¶ 30.)

The Display is a collection of light-up figurines and decorations assembled into two focal points on the southwestern lawn. (Straeter Decl. ¶ 7.) In one set is a plastic Santa, a snowman, a candle with the inscription "Noel," a wire-frame reindeer, and a twirling wire Christmas tree. (*Id*. at ¶ 10.) This set appears closest to the sidewalk and Main Street. (*Id*.) About ten feet behind this set is the other set, the nativity scene. (*Id*.) These are farther away from the sidewalk and Main Street. (*Id*. at ¶ 11.) The nativity scene figurines comprise the same plastic material as the secular figurines, are comparably sized, and similarly light up. (*Id* at ¶ 10.) The "stable" is constructed with strawbales from the Optimist Club's fall fundraiser. (*Id*. at ¶ 12.)

The County has no involvement with the Display design or placement. (Straeter Decl. ¶ 16.) Nor does the County have any record, past or recent, of it using the nativity scene for a religious purpose, promoting the nativity scene as a means for religious proselytization, or otherwise exploiting the nativity scene to convey a message of religious endorsement. (Lewis Decl. ¶ 35; Straeter Decl. ¶ 12.)

### C.    Procedural History.

For over a generation, the Display has been featured on the courthouse grounds each holiday season without incident. In 2018, five days before Christmas, Plaintiff Roger LaMunion (*who does not even live or work in Fulton County*) filed suit, alleging that the Display's nativity scene violates his belief that "local government should [not] be endorsing a religious faith." (Compl. ¶ 19, ECF No. 1.) On September 16, 2020, nearly *21 months* and two Christmases after filing his complaint, Plaintiff filed the instant motion seeking urgent and "preliminary" relief. (Pl.'s Mot. Prelim. Inj., ECF No. 38.) For the reasons set forth below, Plaintiff's motion should be denied.

### LEGAL STANDARD

A preliminary injunction is "an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *LigTel Commc'ns, Inc. v. Baicells Techs., Inc.*, 455 F. Supp. 3d 792, 802 (N.D. Ind. 2020). To obtain the "extraordinary and drastic" remedy of an injunction, *Goodman v. Ill. Dep't of Fin.*, 430 F.3d 432, 437 (7th Cir. 2005), a plaintiff carries a heavy burden of proving (1) that he is reasonably likely to succeed on the merits of his claim; (2) that he is likely to suffer irreparable harm without injunctive relief, and the alleged harm outweighs the harm the defendant would suffer from an injunction; and (3) that the injunction

would be in the public interest. *See Tr. of Teamsters Union No. 142 Pension Fund v. AJ & S Trucking, Inc.*, 992 F. Supp. 2d 870, 877 (N.D. Ind. 2014).

## ARGUMENT

I.    **This Court should summarily deny Plaintiff's motion because of his inexcusable, nearly two-year delay in seeking emergency injunctive relief.**

Plaintiff contends (Pl.'s Mem. Supp. Mot. Prelim. Inj. ["Pl.'s Mem."] 21) that he will suffer irreparable harm without a preliminary injunction, yet he inexcusably waited many decades to even bring this lawsuit, and then waited again nearly two years to file this motion. Plaintiff was aware of this Display going back to at least 1996, but he did not bring this action until 2018. (LaMunion Dep. 29:6–9.) When asked why he waited for two years after filing his lawsuit to seek an urgent injunction, Plaintiff had no justification. (LaMunion Dep. 69:24–70:8.) Plaintiff's extreme and unjustified delay seriously undermines his need for emergency relief. Indeed, "unexcused delay on the part of parties seeking extraordinary injunctive relief is grounds for denial of a motion because such delay implies a lack of urgency and irreparable harm." *Ixmation, Inc. v. Switch Bulb Co., Inc.*, 2014 WL 5420273, at *7 (N.D. Ill. Oct. 23, 2014).

Plaintiff "acknowledges the unusual nature of a request for preliminary relief this late in litigation." (Pl.'s Mem. 1–2.) But he now attempts to blame the delay on the coronavirus pandemic, which he asserts prevented the parties from litigating to summary judgment. (*Id.*) Plaintiff's excuse falls far short. The parties' inability to complete summary-judgment briefing because of a pandemic that began in early 2020 simply cannot justify Plaintiff's failure to bring this lawsuit in 1996 (or many years

6

prior to 2018), nor Plaintiff's failure to seek preliminary injunctive relief in 2018 and 2019, *when there was no pandemic*. The "primary purpose of summary judgment is to avoid unnecessary trials." *Franklin v. Civil City of S. Bend*, No. 3:13-CV-207-TLS, 2015 WL 363461, at *4 (N.D. Ind. Jan. 27, 2015). On the other hand, "[t]he purpose of preliminary injunctive relief is 'to minimize the hardship to the parties pending the ultimate resolution of the lawsuit.'" *Ybarra v. Rodriguez*, No. 3:19-CV-343-JD-MGG, 2020 WL 3529822, at *1 (N.D. Ind. June 30, 2020) (internal quotation marks omitted). The two are not the same, and Plaintiff could and should have done both.

As a consequence of his inaction, Plaintiff cannot now assert the requisite irreparable harm for a preliminary injunction. "[T]he likelihood of irreparable harm takes into account how urgent the need for equitable relief really is." *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 788 (7th Cir. 2011). Here, Plaintiff sued the County on December 20, 2018, about *22 years* after he noticed the Display in 1996. (LaMunion Dep. 29:6–9.) And then, he did not move for *emergency* relief until September 16, 2020, *nearly two years later*. That "tardiness weighs against" Plaintiff's claim of irreparable harm. *Celebration Int'l, Inc. v. Chosun Int'l, Inc.*, 234 F. Supp. 2d 905, 920 (S.D. Ind. 2002).

Delay also weighs heavily against the moving party where, as here, he was aware of the underlying facts of the case well before seeking relief. *See Ixmation*, 2014 WL 5420273 at *7. Plaintiff filed this lawsuit five days before Christmas in 2018. Yet he did not seek an injunction against the Display during that holiday season. Nor did he file a motion for an injunction last year (2019), even though he claims that he had

"direct and unwelcome contact" with the Display at least six or seven different times in December 2019. (Pl.'s Suppl. Stmt. Supp. Mot. Prelim. Inj. ["Pl.'s Suppl. Stmt."] 9–10, ECF No. 42.) After allowing the Display "to go on unchecked" for twenty-two Christmases before filing this lawsuit and two Christmases after filing this lawsuit, "it seems incongruous to now argue that the extraordinary remedy of a preliminary injunction is necessary to prevent irreparable harm." *Celebration Int'l*, 234 F. Supp. 2d at 920. In sum, Plaintiff's delay in bringing this action and this motion demonstrate that his asserted injuries are neither urgent nor irreparable. This Court should reject this motion on this ground alone.

## II.    Plaintiff is unlikely to succeed on the merits of his claims.

### A.    Plaintiff lacks Article III standing to bring this case.

This Court has no jurisdiction over Plaintiff's Establishment Clause claim because he failed to demonstrate he has standing to bring this case. "Standing is the first question because, unless the case presents a justiciable controversy, the judiciary must not address the merits." *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 805 (7th Cir. 2011). At a minimum, Article III requires that a plaintiff invoking federal court jurisdiction show (1) that he personally has suffered, or is imminently threatened with, a concrete and particularized injury-in-fact (2) that is fairly traceable to the defendant, and (3) that will be redressed by a favorable judicial decision. *See Freedom From Religion Found., Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014). Plaintiff has failed to meet those minimal standards because he has alleged no personal injury as a consequence of the Display. His only asserted injury is a

generalized grievance against what he views is a government endorsement of religion. That type of alleged injury is insufficient to obtain standing.

> 1. **A non-resident observer's ideological objection to the Display's presence on the courthouse grounds is not a concrete injury-in-fact.**

Plaintiff neither lives nor works in Fulton County, and yet he seeks an injunction because he "strongly objects" to the Display and because "he does not believe that a religious symbol such as a nativity scene should be displayed on public property." (Pl.'s Suppl. Stmt. 9-10; Pl.'s Mem. 5; Aff. of Roger LaMunion ["LaMunion Aff."] ¶ 14, ECF No. 42-1.) He contends that the County is violating "one of government's most sacrosanct responsibilities," which he asserts is to abide by the "dictates of the Constitution." (Pl.'s Suppl. Stmt. 10; LaMunion Aff. ¶ 14.)

None of those sentiments confers this Court with jurisdiction over Plaintiff's case. "[A] plaintiff cannot establish standing based solely on being offended by the government's alleged violation of the Establishment Clause." *Lew*, 773 F.3d at 819. Instead, Article III requires a plaintiff to prove that he has suffered a concrete invasion of legally cognizable interest. *See Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff's belief (Pl.'s Mem. 5.) that the County is violating the separation of church and state (as he understands it) is not a "distinct and palpable injury" to any legally cognizable right. *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988). (*See* Dep. of Plaintiff Roger LaMunion ["LaMunion Dep."] 65:7–66:13 (attached hereto as **Exhibit C**.) Although Plaintiff contends that the County has violated the Establishment Clause, he fails to identify any personal injury he

9

suffered "*as a consequence*" of the Display's nativity scene, *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 485 (1982) (emphasis added), other than the indignation he feels while allegedly driving past it. (LaMunion Aff. ¶ 4). Plaintiff's "offense" at the nativity scene, and his "desire to have public officials comply with ([his view of]) the Constitution, differs from a legal injury," *Obama*, 641 F.3d at 807, and is therefore insufficient to confer Article III standing.

### 2. Plaintiff's allegation of a "drive-by" injury is meritless because Article III does not confer standing on mere "offended observers" of a religious display.

Plaintiff asserts that even though he does not live or work in Fulton County, he makes multiple trips to Rochester each December to run errands or to visit friends. (Pl.'s Suppl. Stmt. at 9.) He contends that during those trips, he has "direct and unwelcome contact" with the Display whenever he passes by the courthouse. (*Id.* at 9–10; LaMunion Aff. 13.) Plaintiff's attempt to obtain "drive-by standing" is misplaced. The Seventh Circuit's rule governing this case is straightforward: "[V]iewers of an unwelcome religious display lack standing." *Obama*, 641 F.3d at 807 (citing *Am. Civil Liberties Union of Ill. v. City of St. Charles*, 794 F.2d 265, 268 (7th Cir. 1986); *accord Valley Forge*, 454 U.S. at 485 (noting that a plaintiff does not suffer an injury-in-fact "where the only harm is psychological injury produced by observation of conduct with which one disagrees") (citation omitted). A long line of cases from the Seventh Circuit hold that, to adequately allege that he has suffered an injury-in-fact from a religious display, a plaintiff must prove that "he has undertaken a special burden or has altered his behavior to avoid the offensive object."

*Books v. City of Elkhart*, 235 F.3d 292, 299 (7th Cir. 2000); *Zielke*, 845 F.2d at 1467 (same); *see also, e.g.*, *City of St. Charles*, 794 F.2d at 269 (plaintiff had standing to challenge a cross because she altered her behavior to avoid seeing it); *Harris v. City of Zion*, 927 F.2d 1401 (7th Cir. 1991) (plaintiffs had standing to challenge religious symbols on city seal because they used alternative travel routes to avoid contact with seals); *Obama*, 641 F.3d at 808 (plaintiffs had no standing because they "have not altered their conduct one whit or incurred any cost in time or money").

Notwithstanding that he has alleged no actual or imminent concrete injury, Plaintiff has failed to show that he assumed any special burden or altered his conduct to avoid seeing the Display. What is more, Plaintiff admitted not only that he has never altered his conduct in the past, but also that he has no intention to alter his conduct to avoid the Display in the future. (LaMunion Dep. 48:21–49:4.) As such, Plaintiff's sighting of the display whenever he drives past the courthouse to run errands or visit friends (LaMunion Aff. ¶ 13; Pl.'s Suppl. Stmt. 9–10) is not the type of "direct and unwelcome" contact that gives rise to Article III standing.

Plaintiff's purported concern about potential, future contact with the Display (Pl.'s Mem. 5) are not enough. *See Lujan*, 504 U.S. at 565 n.2. "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (quoting *City of L.A. v. Lyons,* 461 U.S. 95, 102 (1983). Plaintiff has not alleged that the Display will cause him actual future injury greater than his generalized grievance.

To be sure, Plaintiff has admitted that *he has no actual business in the Courthouse*, and thus has *no past, present or anticipated future need to be there*. (LaMunion Dep. 48:21–49:4.) And even if he did, because the Courthouse's exclusive entrance and exit are now on the east side, Plaintiff could visit it to take care of business without ever seeing the western lawn, where the Display resides during season. (Lewis Decl. ¶ 7.) Plaintiff is strictly a drive-by offended observer from outside the County, and that is not nearly enough for Article III standing.

In sum, Plaintiff lacks Article III standing to obtain injunctive relief. This Court should deny Plaintiff's motion.

### B.    The Display complies with the Establishment Clause.

For at least four decades and likely several more, the County has permitted the Display on the courthouse grounds during the holiday season. Now, decades later, an out-of-county plaintiff with no business at the courthouse (LaMunion Dep. 47:11–20) contends that the Display violates the Establishment Clause because it is an inherently religious symbol that conveys a message governmental endorsement of religion. Binding Supreme Court and Seventh Circuit precedent foreclose that claim.

#### 1.    The Display is presumptively constitutional under *American Legion*.

At the outset, Plaintiff predicates his entire Establishment Clause argument on a false premise: that the *Lemon* test applies to religious displays. The Supreme Court's decision in *American Legion v. American Humanist Association* confirms that *Lemon* simply does not apply to "religious references or imagery in public monuments, symbols, mottos, displays, and ceremonies." 139 S. Ct. 2067, 2081–82 & n.16 (2019)

(plurality opinion). Instead, informed by four considerations, the Supreme Court accords "a strong presumption of constitutionality" for "established, religiously expressive monuments, symbols, and practices." *Id*. at 2085.

Focused here, these considerations include that (1) identifying a display's original purpose or purposes is often difficult; (2) those original purposes may multiply over time, especially through decisions to retain the display; (3) the message the display conveys likewise may change over time; and (4) removing a longstanding display imbued with "familiarity and historical significance" may appear hostile to religion. *Id*. at 2082–85.

The Display is presumptively constitutional under *American Legion*. The Display is "established" because it has been featured on the courthouse grounds each holiday season for at least four decades, and likely several more. 139 S. Ct. at 2085. (Straeter Decl. ¶¶ 5–6; Lewis Decl. ¶ 30.) It is a religiously expressive display because its nativity scene component depicts the origins of Christmas, that is Christ's birth. And it is a "practice" because the County permits its exhibition every holiday season. 139 S. Ct. at 2085. (Lewis Decl. ¶¶ 32, 34–35.) All these conditions trigger the "strong presumption of constitutionality." *Id*.

Plaintiff contends that *American Legion* only applies to "longstanding" monuments and not to "a nativity scene that is erected only for a handful of weeks each year." (Pl.'s Mem. 8.) That is false. Whether a display is "longstanding" is not an exclusionary criterion for its presumption of constitutionality. Indeed, the Supreme Court noted that most Establishment Clause cases "can be divided into six rough

13

categories," the first of which are "religious references or imagery in public monuments, symbols, mottos, displays, and ceremonies." *Am. Legion*, 139 S. Ct. at 2082 n. 16. The *first* case the Court cites as an example is *Lynch v. Donnelly*, 465 U.S. 668, 680 (1984), *which involved a nativity scene. See id*. It follows that just like the crèche display in *Lynch*, the Display is presumptively constitutional.[1]

Even if the *American Legion* Court had not expressly cited a nativity scene case in discussing the types of displays that could be entitled to the presumption of constitutionality, the Supreme Court has repeatedly held that legislative prayers are sufficiently "longstanding" in our nation's history to be presumed constitutional. *See Am. Legion*, 139 S. Ct. at 2087; *Town of Greece v. Galloway*, 572 U.S. 565, 577 (2014); *Marsh v. Chambers*, 463 U.S. 783 (1983). Like a nativity scene, a legislative chaplain is not perpetually in action. Instead, he prays sporadically, for very short periods, and takes long breaks for weeks or months at a time when the legislative body is not in

---

[1] Although *American Legion* does not define "longstanding," the Supreme Court has instructed that the Establishment Clause must be interpreted "by reference to historical practices and understandings." *Town of Greece, N.Y. v. Galloway*, 572 U.S. 565, 576 (2014) (quoting *Cty. of Allegheny v. Am. Civil Liberties Union Greater Pitts. Ch.*, 492 U.S. 573, 670 (1989) (Kennedy, J., concurring in judgment in part and dissenting in part)). In upholding the Pawtucket crèche, *Lynch* identified many government traditions of "respect[ing] the religious nature of our people," *id*. at 678 (citations omitted), including naming Thanksgiving and Christmas as "religious holiday[s]," *id*. at 675–76; identifying God in the "national motto," on "our currency," and in "the Pledge of Allegiance," *id*. at 676; constructing government buildings with "symbol[s] of religion," *id*. at 677; and proclaiming "a National Day of Prayer," *id*. The practice of displaying nativity scenes is older than the United States: The Moravians constructed the first crèches in Bethlehem, Pennsylvania, in the 1740s. *See* Emma Diehl, *Central Moravian Church Putz*, THE MORNING CALL (Dec. 12, 2012), https://perma.cc/2N6R-9MSN.

session.[2] Thus, it is not the "temporal" or round-the-clock nature of a Display or practice that determines whether it is longstanding, but rather how long that practice or Display has been in existence. Here, the answer is four or six decades in Fulton County alone, and almost three *centuries* on this continent. *See* n.1, *supra*.

Even though none of *American Legion*'s considerations is essential for the presumption to apply, *see Freedom From Religion Found., Inc. v. Cty. of Lehigh*, 933 F.3d 275, 282 (3d Cir. 2019), they further confirm the Display's constitutionality. *First*, this case is about a display that was "first established" more than 40 years ago, possibly sixty. 139 S. Ct. at 2082. (Lewis Decl. ¶ 30; Straeter Decl. ¶ 6.) The Optimist Club has maintained the Display since at least 1980, and the Retail Merchants Association had displayed it for a long time before that. (Straeter Decl. ¶ 5.)

*Second*, even if the Display's original purpose was religious (and there is no evidence of that), "the passage of time [has] obscure[d] that sentiment." *Am. Legion*, 139 S. Ct. at 2083. For four decades (and likely longer), the Display has had "its place in [Rochester's] common cultural heritage." 139 S. Ct. at 2083. That the Display went unchallenged for over 40 years suggests that the community "has considered the religious aspect of the [Display's] message as part of … a broader [secular] message" of celebrating Christmas. *Van Orden v. Perry*, 545 U.S. 677, 702–703 (2005) (Breyer, J., concurring in judgment).

---

[2] Ida Brudnick, *House and Senate Chaplains*, CONG. RES. SERV. (2011), https://crsreports.congress.gov/product/pdf/R/R41807.

*Third*, "[f]amiliarity itself can become a reason for preservation." *Am. Legion*, 139 S. Ct. at 2084. Year after year, local families, students, volunteers, and community groups gather at the courthouse for the Holiday Stroll event to celebrate the holidays. (Lewis Decl. ¶ 20.) And year after year, residents recognize and appreciate the Display. Although 40-something years is hardly close in time to the 90-year-old Bladensburg Cross in *American Legion*,[3] the nativity scene has existed long before the children who line up along the sidewalk to visit Santa in his house or take pictures next to the Display. (*See* Lewis Dep. 23:17–24:1 [testifying that nativity scene has been around since he was a child]; Lewis Decl. ¶ 30.)

*Fourth*, because "time's passage imbue[d]" the nativity scene with "this kind of familiarity and historical significance, removing it may no longer appear neutral, especially to the local community." *Am. Legion*, 139 S. Ct. at 2084. In short, the Display "has taken on particular meaning" to the Rochester community, *id.* at 2084, namely as a cornerstone of the city's public Christmas celebrations. (Lewis Decl. ¶ 36.) Removing or radically altering this cherished community display—as Plaintiff demands—"would be seen by many not as a neutral act but as the manifestation of 'a hostility toward religion that has no place in our Establishment Clause traditions." *Id.* at 2074 (quoting *Van Orden*, 545 U.S. at 704 (Breyer, J., concurring in judgment)) (Lewis Decl. ¶ 38.)

---

[3] In *American Legion*, the Court also referenced the religiously symbolic monument of Pueblo religious leader Po'pay inside the U.S. Capitol, *see* 139 S. Ct. at 2086, which was erected only in 2005. *See Po'pay*, Architect of the Capitol, https://perma.cc/2Y7E-UAAX. By contrast, the Display here is many decades older.

      2.      **Plaintiff has failed to overcome the Display's presumptive constitutionality.**

In *American Legion*, the Supreme Court suggested that challengers could overcome a display's presumption of constitutionality by demonstrating a "discriminatory intent in the selection of the design of the memorial or the decision of a [government body] to maintain it." 139 S. Ct. at 2074. The Court also focused on whether the monument was designed or built to "deliberately disrespect[ ]" people of other faiths. *Id*. at 2089. Plaintiff has not come even close to overcoming the longstanding Display's presumption of constitutionality.

Plaintiff has presented no evidence of any "discriminatory intent" by the County. *Am. Legion*, 139 S. Ct. at 2074; *cf. Lynch*, 465 U.S. at 680 ("[I]t is apparent that, on this record, there is insufficient evidence to establish that the inclusion of the crèche is a purposeful or surreptitious effort to express some kind of subtle governmental advocacy of a particular religious message."). Nor has Plaintiff demonstrated any "deliberate[ ] disrespect[ ]" in the Display's design. *Id*. at 2089. Instead, the record is clear that the County's purpose in allowing the Display is to celebrate the various facets of the holiday season and to depict the historical origin of Christmas (Lewis Decl. ¶ 35.)—both of which are legitimate secular purposes. *See Lynch*, 465 U.S. at 671, 681. In short, Plaintiff cannot overcome the Display's "strong presumption of constitutionality." *Am. Legion*, 139 S. Ct. at 2074.

      3.      **The Establishment Clause permits the inclusion of a nativity scene in a broader holiday display.**

Even if the *American Legion*'s presumption of constitutionality would not foreclose Plaintiff's case, which it does, long before *American Legion* both the

Supreme Court and Seventh Circuit made clear that the Establishment Clause does not prohibit nativity scenes on public property, where, as here, they are integrated in a larger display containing both secular and religious elements. In *Lynch*, the Supreme Court held that the Establishment Clause permits a city to include a nativity scene as part of a display that comprised "many of the figures and decorations traditionally associated with Christmas." 465 U.S. at 671. In its determination, the Court refused to focus exclusively on the crèche as a religious symbol but instead considered the display as a whole, which "principally take[s] note of a significant historical religious event long celebrated in the Western World." *Id.*

On the other end of the spectrum, in *American Jewish Congress v. City of Chicago*, the Seventh Circuit acknowledged that religiously expressive displays on government property are permissible but nonetheless struck down a standalone crèche located inside a city hall. 827 F.2d 120 (7th Cir. 1987). The Court concluded that the nativity scene was "self-contained, rather than one element of a larger display," and thus communicated a message of government endorsement of religion. *Id.* at 125. In both cases, the decisive consideration was the context of the nativity scene. In *Lynch*, the "focus" was the crèche "in the context of the Christmas season." 465 U.S. at 679. And in *American Jewish Congress*, the "critical inquiry" concerned the crèche's "unique physical context." 827 F.2d at 127–28.

The Seventh Circuit harmonized these principles in *Mather v. Village of Mundelein*, where it upheld a nativity scene that had been displayed on the lawn of a village hall every Christmas season for over 25 years. 864 F.2d 1291 (7th Cir. 1989).

18

The nativity scene was just one part of a broader holiday display that included "a Santa Claus and sleigh, carolers, snowmen, carriage lights, wreaths, and two soldiers in the shape of nutcrackers." *Id.* at 1292. In striking down the display, the district court concluded that "[d]espite the many other items in the display, the creche remains the predominant feature and a self-contained exhibit." 699 F. Supp. 1300, 1307 (N.D. Ill. 1988), *rev'd,* 864 F.2d 1291 (7th Cir. 1989), and thus it determined that "no principled distinction" existed between the crèche and the display in *American Jewish Congress. Id.* at 1306.

In reversal, the Seventh Circuit emphasized its obligation to "characterize a crèche that is part of a display—and inevitably will be seen in the context of an ensemble of seasonal symbols." *Vill. of Mundelein*, 864 F.2d at 1292. In its analysis, the Court followed *Lynch* in recognizing that "the context—the context of the ensemble, and more important the context of the secular holiday the government observes—is the controlling consideration." *Id.* at 1293. The Court weighed the Mundelein crèche against *Lynch* and *American Jewish Congress* displays and concluded that the crèche was constitutional because the Village placed it "in the context of other seasonal symbols, showing support for the holiday season rather than for the religious aspect alone." *Id.* at 1292.

Here, the "context of the ensemble" and more importantly, "the context of the secular holiday," *Vill. of Mundelein*, 864 F.2d at 1293, clearly shows that the Rochester Display falls squarely within the wholly permissible displays in *Lynch* and *Village of Mundelein*. Like the crèches in those cases, the Rochester Display is

19

outdoors in a park-like setting, not inside the Courthouse like the crèche in *American Jewish Congress*. 827 F.2d at 125. And more importantly, the Display's crèche is one part of a tableau of "seasonal symbols, showing support for the holiday season rather than for the religious aspect alone." *Vill. of Mundelein*, 864 F.2d at 1292.

Plaintiff concedes that a crèche may be mitigated by context, but he nonetheless contends that the Supreme Court "has never hinted that the crèche itself had secular attributes." (Pl.'s Br. 10.) That is beside the point. As the Court noted in *Lynch*, "[e]ven the traditional, purely secular displays extant at Christmas, with or without a crèche, would inevitably recall the religious nature of the Holiday." 465 U.S. at 685. Likewise, as Justice O'Connor added, a crèche is "a traditional symbol of the holiday that is very commonly displayed along with purely secular symbols." *Id*. at 692 (O'Connor, J., concurring). It follows that the Display, like the *Lynch* crèche, "serves a secular purpose—celebration of a public holiday with traditional symbols." *Id*. at 693 (O'Connor, J., concurring).

Plaintiff asserts that the nativity scene is unconstitutional because "there simply is nothing secular about a crèche" and it is "inherently and exclusively religious." (Pl.'s Mem. 10.) But the Supreme Court rejected that exact argument in *Lynch*. There, the district court had erroneously inferred that because of the crèche's "religious nature," the sponsoring city had "no secular purpose" for displaying it. 465 U.S. at 681. To the Seventh Circuit, the district court's determination was "clearly erroneous," *id*., because the city articulated two "legitimate secular purposes": "to celebrate the Holiday and to depict the origins of that Holiday." *Id*. So too here. The

County simply has no other purpose for allowing the Rochester community to Display than to celebrate the holiday season. (Lewis. Decl. ¶ 35.) In light of the Supreme Court's unequivocal holding in *Lynch*, Plaintiff's contrary arguments are meritless.

Relying on an out-of-circuit court case, Plaintiff contends that recent additions of "secular figurines" near the nativity scene betrays the County's religious purpose. (Pl.'s Mem. 12–13.) Setting aside that Plaintiff's contention has no basis in the record,[4] which by itself is fatal, the Seventh Circuit addressed, and rejected, that same argument in *Village of Mundelein*. After receiving complaints about the crèche, the Village placed "other symbols of the season" alongside the nativity scene. 864 F.2d at 1292. The Court found no issue with that decision; instead, it noted that the Village permissibly "placed the crèche in the context of other seasonal symbols, showing support for the holiday season rather than for the religious aspect alone." *Id.*

Plaintiff contends that simply viewing the nativity scene itself reveals the County's religious endorsement. (Pl.'s Mem. 14.) Again, the Supreme Court flatly rejected that argument in *Lynch*. As the Court observed, "Focus exclusively on the religious component of any activity would inevitably lead to its invalidation under the Establishment Clause." 465 U.S. at 680. The Court instead found that the crèche's inclusion in the display did not have the effect of advancing religion because any benefit to "one faith or religion or to all religions[] is indirect, remote and incidental,"

---

[4] Instead, the testimony of the Optimist Club is that secular symbols have been part of the Display all along. (Straeter Decl. ¶ 10.) The County confirms this. (Lewis. Decl. ¶ 30; Lewis Dep. 23:17–23.) Plaintiff's statement that he does not remember secular symbols going farther back than a few years is wholly insufficient to rebut the contrary evidence in the record.

and "display of the creche is no more an advancement or endorsement of religion than the Congressional and Executive recognition of the origins of the Holiday itself as 'Christ's Mass,' or the exhibition of literally hundreds of religious paintings in governmentally supported museums." 465 U.S. at 683.

Plaintiff labors mightily (Pl.'s Mem. 15–16) to convince this Court that the Display's nativity scene component is an isolated monolith far removed from any other holiday decorations. That is false. A reasonable observer "is not one who wears blinders and is frozen in a position focusing solely on the crèche." *Elewski v. City of Syracuse*, 123 F.3d 51, 54 (2d Cir. 1997). When viewing the Display from any angle, a reasonable observer would see all its components, including the Santa, snowman, and candle figurines; the wire-framed reindeer and Christmas tree; and the nativity scene. All those items are within a ten- to fifteen-foot radius. Moreover, nearby lighted Christmas trees, which are widely recognized as secular holiday symbols, *see Cty. of Allegheny*, 492 U.S. at 617 (plurality opinion), actually dwarf the entire Display. In this physical context, a reasonable observer could not perceive the Display as a message of religious endorsement.

Plaintiff further posits (Pl.'s Mem. 19) that even the Display *as a whole* is unconstitutional. "[U]sing little more than intuition and a tape measure," *Cty. of Allegheny*, 492 U.S. at 675–76 (Kennedy, J., concurring in part and dissenting in part), he opines that the "secular figurines are notable for their randomness" and are merely "after-thoughts." (Pl.'s Mem. 19.) He surmises that the "candle in particular is curious" because he infers no "season significance." (*Id*.) And he speculates that figurines

22

appear to be facing in entirely random directions. (*Id.* at 20). But deciding this case "on the basis of such an unguided examination of marginalia is irreconcilable with the imperative of applying neutral principles in constitutional adjudication." *Cty. of Allegheny*, 492 U.S. at 675–76 (Kennedy, J., concurring in part and dissenting in part).

At bottom, Plaintiff asks this Court to apply a level of "scrutiny more commonly associated with interior decorators than with the judiciary." *Am. Jewish Cong. v. Chicago*, 827 F.2d at 129. (Easterbrook, J., dissenting). Here, the Display comprises a collection of light-up figurines stored, assembled, and displayed *together*. (Straeter Decl. ¶ 7–10.) The Display is nothing like the crèche in *American Jewish Congress*, a showcase exhibit inside a government building bereft of any context within a broader seasonal display. Like the crèche in *Lynch*, the Display is a "passive symbol," indistinguishable from "a host of other forms of taking official note of … our religious heritage." 465 U.S. at 686. To forbid such displays "would be a stilted overreaction contrary to our history and to our holdings." *Id.* at 686.

## III.   Plaintiff will suffer no irreparable harm without an injunction.

Plaintiff contends that without an "immediate injunction," he "will be forced to endure" the Display's "continuing violation" of his First Amendment rights. (Pl.'s Mem. 22.) That argument is baseless. As discussed above, Plaintiff was required, yet failed, to demonstrate that he has suffered some concrete, legally cognizable injury to his First Amendment rights. Instead, he offers nothing more than generalized assertions that fall far short of the necessary showing to warrant preliminary relief.

Plaintiff flatly asserts that "[n]othing more need be demonstrated" than simply alleging a First Amendment violation. (Pl.'s Mem. 22.) But "injury to constitutional

rights does not a priori entitle a party to a finding of irreparable harm." *Ditton v. Rusch*, 2014 WL 4435928, at *5 (N.D. Ill. Sept. 9, 2014). Even if a presumption of irreparable harm attaches to Plaintiff's Establishment Clause claim, that presumption is easily overcome: Plaintiff's failure to file this lawsuit for 22 years after he saw the Display, and his failure to timely seek preliminary relief "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). Because Plaintiff has not established by a clear showing that he will suffer irreparable harm without injunctive relief, his motion should be denied.

## IV.   Granting an injunction would harm the County, local residents, and the public interest.

Because Plaintiff has not made the threshold showings of a likelihood of success on the merits and irreparable harm, this Court need not proceed further. *See Planned Parenthood of Ind. v. Comm'r of Ind. State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). Even so, the Court should still deny Plaintiffs' motion because the balance of equities and public interest, which merge when the government is the defendant, *see Nken v. Holder*, 556 U.S. 418, 435 (2009), tip sharply in the County's favor.

When considering the final two factors of the preliminary injunction analysis, courts must "pay particular regard for the *public consequences* in employing the extraordinary remedy of injunction[.]" *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 24 (2008) (emphasis added). Enjoining the Display is not in the public interest.

Instead, it upends the community's embrace of the Display in favor of a single complainant who does not even live in the County or have any business on the courthouse grounds. And given that Plaintiff's alleged harm is nothing more than a generalized grievance at seeing a display on government property, the harm to the public is all the more acute.

A preliminary injunction is also inappropriate because it would upend the status quo. "The purpose of a preliminary injunction is to preserve the object of controversy in its then existing condition, *i.e.*, preserve the status quo." *E.E.O.C. v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir.1980). Here, however, Plaintiff does not seek to maintain the status quo; he aims to have the Court disrupt it by removing the Display's nativity scene in its entirety. At this point in the litigation, nearly two years after it began, preserving the status quo would maintain the County's "accommodation" and "tolerance" toward the public's celebration of Christmas with religious symbols. *Lynch*, *supra*, 465 U.S. at 673.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

25

Dated: November 16, 2020                    Respectfully submitted,

                                            /s/ Horatio G. Mihet
                                            Mathew D. Staver,
                                              *Counsel of Record*
                                            Horatio G. Mihet
                                            Roger K. Gannam
                                            Daniel J. Schmid
                                            LIBERTY COUNSEL
                                            P.O. Box 540774
                                            Orlando, Florida 32854
                                            (407) 875-1776
                                            court@LC.org

                                            *Attorneys for Defendant-Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2020, I electronically filed a copy of the foregoing memorandum on the Court's ECF filing system. Service of this filing will be sent by email to all parties through the Court's electronic notice system.

Dated: November 16, 2020              /s/ Horatio G. Mihet
                                      _____
                                      Horatio G. Mihet

                                      *Attorney for Defendant*